IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 23, 2026

**STATE OF TENNESSEE v. JACOB FRANKS**

**Appeal from the Circuit Court for Madison County**
**No. 24-834    Donald H. Allen, Judge**

_____

**No. W2025-00616-CCA-R3-CD**

_____

The Defendant, Jacob Franks, was convicted by a Madison County Circuit Court jury of sexual exploitation of a minor involving fifty or more images, a Class C felony, and fifteen counts of sexual exploitation of a minor, a Class D felony. *See* T.C.A. § 39-17-1003(a), (d) (2025). The trial court imposed an effective six-year sentence, to be served at 100%. On appeal, the Defendant contends that the trial court erred by excluding evidence of the Defendant's roommate's notarized written statement after the roommate invoked his Fifth Amendment privilege against self-incrimination at the trial. We conclude that the trial court erred in excluding the evidence. We affirm the judgments in Counts 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15. We reverse the judgments in Counts 1, 2, 3, 4, 12, and 16 and remand for a new trial on these counts.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and STEVEN W. SWORD, JJ., joined.

Jeremy Epperson, District Public Defender; Kendall Stivers Jones (on appeal), Assistant Public Defender – Appellate Division; and Austin Bethany (at trial), Assistant District Public Defender; for the appellant, Jacob Franks.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jody Pickens, District Attorney General; and Matthew Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to child pornography data that State correction officers found on his cell phone when conducting a home visit. The Defendant and his roommate, Ezekiel Land, were both subject to supervision due to their status as registered sex offenders.[1] Child pornography discovered at Mr. Land's workplace led to a home visit at the apartment he and the Defendant shared, at which time officers discovered child pornography images on the Defendant's cell phone. The Defendant's convictions relate to the seventy images recovered from a data extraction performed on his cell phone. Mr. Land was charged and prosecuted separately. Information about the precise nature of Mr. Land's charges, other than that they are related to child pornography, is not in the record.

At the Defendant's trial, Correction Officer Jalin Curry testified that he and other officers completed a home visit of the Defendant and Mr. Land's apartment on February 29, 2024. Officer Curry said the Defendant was subject to supervision by the State. During the visit, Officer Curry searched the Defendant's cell phone with the Defendant's consent. Officer Curry said he viewed "maybe four or five" images of "underaged children nude." He said that he asked the Defendant "if he was aware" and that the Defendant responded that "he was aware." Officer Curry said that he showed the images to the Defendant, who "appeared to be surprised," and who stated that he "didn't know how to handle it when it popped up on his phone."

Jackson Police Officer Aubrey Richardson testified that she responded to the Defendant's apartment on February 29, 2024, and that she later performed a data extraction of the Defendant's cell phone. She said the data included images which depicted child sexual abuse of girls who appeared to be younger than age eighteen and who were "in various levels of undress." Images extracted from the cell phone were received as exhibits. Officer Richardson said that some of the images appeared to be screenshots from a website and others were "just a file, a picture that was saved at one point." She said that the extraction sometimes recovered "cast images," which were images that had been deleted but were still present in the cell phone's memory. Officer Richardson said the cell phone data showed that the Defendant had conducted "multiple" internet searches involving sexually explicit material and had included the search term "preteen." She said the images had been stored on the cell phone from November 22, 2023, to "January 20-something," 2024.

Officer Richardson testified that, while she was at the Defendant's apartment, she advised him of his rights, that he waived his rights, and that she spoke with him. She said

---

[1] The jury was unaware that the Defendant and Mr. Land had prior convictions for sexual offenses and that they were on the sex offender registry.

she wrote a brief statement based on their conversation, which she said the Defendant adopted by signing. She read the signed statement, which stated, "I . . . did have a few pictures of child pornography on my phone. They were a redirect that I took a screen shot of them." Officer Richardson explained, "A redirect is typically when you access a website and it takes you to somewhere that you don't intend to be, or something you didn't search for, or a . . . different webpage." She did not recall reviewing the images on the Defendant's cell phone with him and said she had "asked him generally about stuff on his phone." Officer Richardson agreed that the Defendant had a roommate.

The child pornography images received as exhibits during Officer Richardson's testimony consisted of: Exhibit 1, which consisted of 55 images, and Exhibits 2 through 16, each of which was a single image. The exhibit numbers corresponded with Counts 1 through 16 of the indictment. With regard to Exhibit 1, Officer Richardson identified image 1R as a deleted image, and she identified image 1DD as a screenshot. Officer Richardson also identified Exhibits 5, 6, 10, 11, 14, and 15 as screenshots. She identified Exhibit 9 as a "possible screenshot." She did not express an opinion, nor was she asked, if the remaining exhibits were screenshots. Officer Richardson agreed that indications of a cell phone screenshot included "the battery life and time" appearing on an image, "[t]he bottom part was a website," and "[e]verything as a whole." In addition to the images specifically identified as screenshots by Officer Richardson, the following exhibits also had characteristics consistent with Officer Richardson's description of screenshots, indicating that they were screenshots: 1M, 1P, 1Q, 1R, 1DD, 1FF, 1RR, 1SS, 1TT, 1VV, 1XX, 1YY, 1ZZ, 1AAA, 7, 8, 9, and 13.

After the State rested, the trial court conducted a jury-out hearing related to the prospective testimony of Ezekiel Land, the Defendant's roommate on February 29, 2024. Mr. Land and his counsel were present. Mr. Land's counsel represented him in pending charges related to the correction officers' February 29, 2024 visit to the apartment that Mr. Land shared with the Defendant. According to information the prosecutor relayed to the court earlier in the proceedings, correction officers initially discovered child pornography images at Mr. Land's workplace, which precipitated the home visit to the apartment shared by Mr. Land and the Defendant, both of whom were subject to supervision because both were registered sex offenders.

Counsel for Mr. Land advised the court of his understanding that the defense planned to call Mr. Land "to . . . confess to the images that are on the Defendant's device in this case." Mr. Land stated that, on the advice of his counsel, who was also present, he would invoke his Fifth Amendment privilege against self-incrimination if he were called to testify as a defense witness.

After the jury returned, the defense called Ezekiel Land, who invoked his Fifth Amendment privilege for each question asked. Defense counsel asked Mr. Land if he had been the Defendant's roommate, if he had access to the Defendant's cell phone and had "put any images on" the Defendant's cell phone, and if he had made a statement in a document notarized by Fred Cunningham about the Defendant's charges.

The trial court held a second jury-out hearing related to Mr. Land. The court announced its intent to strike Mr. Land's testimony and to instruct the jury that it could not consider Mr. Land's invocation of his Fifth Amendment privilege as evidence. Defense counsel asked, "Is the Court holding him to be legally unavailable under the rule?" The court responded, "No, I'm not holding him to be legally unavailable. He is. He's available to testify." Defense counsel objected on the basis that Mr. Land was "legally unavailable," and the court responded, "No, it doesn't make him legally unavailable. He's here. He testified." Counsel stated that the jury should be allowed to consider Mr. Land's answers to the questions he was asked. The court disagreed. Counsel then stated that he intended to call another witness, Fred Cunningham, to testify about a notarized statement signed by Mr. Land, and counsel argued that the notarized statement should be admitted as former testimony of an unavailable witness pursuant to Tennessee Rule of Evidence 804.[2] The court ruled that Mr. Land was not a "legally unavailable" witness under Rule 804 and that it would instruct the jury that they must disregard the questions asked of Mr. Land and his responses to them. After this ruling, the prosecutor advised the court that he had located "a 2008 case" which held, "When an alleged accomplice asserted at defendant's trial his Fifth Amendment against [sic] self-incrimination, he became unavailable for purposes of hearsay." The prosecutor conceded that Mr. Land was an unavailable witness, but the court remained unconvinced.

The trial court permitted the defense to make an offer of proof. Madison County constable and notary public Fred Cunningham testified that, while he was notarizing documents at the jail for an individual other than Mr. Land, Mr. Land asked him to notarize a "statement." Constable Cunningham identified the notarized statement, which was received as an exhibit as part of the offer of proof. Constable Cunningham said that Mr. Land wrote and signed the statement, which Constable Cunningham notarized. Constable Cunningham later acknowledged that he had not seen Mr. Land write or read the statement. Constable Cunningham agreed that the statement had already been written before Mr. Land signed it in Constable Cunningham's presence.

Constable Cunningham acknowledged that Mr. Land's attorney was not present when he notarized Mr. Land's statement and that Constable Cunningham had not advised

---

[2] Tennessee Rule of Evidence 804 provides, as relevant here, a hearsay exception for admission of statements against interest of an unavailable witness. *See* Tenn. R. Evid. 804(b)(3).

Mr. Land of his privilege against self-incrimination. Constable Cunningham agreed that Mr. Land was a jail inmate at the time.

The notarized statement stated the following:

> I Ezekiel D. Land, being of sound mind and body, do hereby confess to the crimes pending against Jacob D. Franks. We had been roommates for several years & he often left his phone in the common areas. I was under the influence of alcohol & while drunk I mistook his phone for mine. I am more technically inclined & even set up his phone. I believed I had deleted the images on his phone as well as erased the search data; so there is no way for him to have knowingly possessed the material.

The statement was signed by Mr. Land and was dated September 19, 2024.

The trial court found that Constable Cunningham was a law enforcement officer and that he did not advise Mr. Land, who was in custody, of his *Miranda* rights. The court ruled that the statement was inadmissible and reiterated its ruling that Mr. Land was not an unavailable witness, again noting that Mr. Land had been called as a witness and had chosen, on the advice of counsel, to invoke his Fifth Amendment privilege.

The jury reentered the courtroom, and the trial court instructed them "not to consider the questions that were asked of" Mr. Land. The court also instructed them that the questions and Mr. Land's responses were not evidence in the case.

The Defendant elected not to testify. As shown by defense counsel's closing argument, the defense theory of the case was that, although the Defendant admitted at the scene that he knew about the four or five images the correction officers initially found on his cell phone, the State failed to prove that he knowingly possessed the other images later discovered as a result of the data extraction from his cell phone.

The jury found the Defendant guilty of the charged offenses: one count of sexual exploitation of a minor involving fifty or more images and fifteen counts of sexual exploitation of a minor involving single images. The trial court imposed concurrent sentences of six years for the multiple image offense and four years for each of the single image offenses. The sentences were imposed at 100% service. This appeal followed.

The Defendant contends that the trial court erred by excluding Mr. Land's notarized statement because it was admissible pursuant to Tennessee Rule of Evidence 804(b)(3). The Defendant argues that this court should reverse his convictions and remand the case for a new trial. The State responds that the court did not err in excluding the statement

because it "did nothing to prove the defendant's innocence." Alternatively, the State argues that any error in excluding the statement was harmless in the face of the evidence of the Defendant's admission that he knew his phone contained child pornography images. To this, the Defendant responds that the error was not harmless because the Defendant only acknowledged that he knew his phone contained the four or five images that the officers viewed at his apartment and not that he knew of the many additional images that were later discovered by data extraction from his cell phone.

In ruling on the admissibility of Mr. Land's statement, the trial court was required to determine, first, whether the statement was hearsay. If the court determined that the statement was hearsay, it was then required to determine whether the statement was nevertheless admissible pursuant to a hearsay exception because it was made by an unavailable witness.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is inadmissible unless it qualifies as an exception. *Id.* at 802.

Tennessee Rule of Evidence 804 provides, as relevant here, a hearsay exception for admission of statements against interest of an unavailable witness. *See* Tenn. R. Evid. 804(b)(3). A statement against interest is one

> which was the at time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

*Id.* As relevant here, "Unavailability of a witness" includes situations in which the "declarant . . . is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement[.]" Tenn. R. Evid. 804(a)(1).

A trial court's factual findings and credibility determinations relative to a hearsay issue are binding upon an appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). The determination of whether the statement in question is hearsay and whether a hearsay exception applies are questions of law that are reviewed de novo. *Id.*

"Because a witness's unavailability pursuant to Rule 804(a) involves questions of fact, a trial court's determination regarding whether that witness is unavailable is reviewed

for abuse of discretion. *State v. Kibodeaux*, 680 S.W.3d 320, 329 (Tenn. Crim. App. 2023) (*citing State v. Jones*, 568 S.W.3d 101, 129 (Tenn. 2019)."

The defense first attempted to have Mr. Land testify about the images on the Defendant's cell phone, but Mr. Land invoked his Fifth Amendment privilege and declined to answer questions. The defense then sought to introduce the notarized statement in which Mr. Land "confess[ed] to the crimes pending against [the Defendant.]" Because the Defendant sought to use this out-of-court statement as evidence to prove its truth, its contents were hearsay. *See* Tenn. R. Evid. 801.

The trial court found that Mr. Land was not an "unavailable witness" as contemplated by Rule 804(a)(1). When Mr. Land invoked his Fifth Amendment privilege and refused to answer questions and the trial court did not order him to testify, he became an unavailable witness. *See* Tenn. R. Evid. 804(a)(1); *State v. Bilbrey*, 912 S.W.2d 187, 188 (Tenn. Crim. App. 1995) (holding that a witness who invoked his privilege against self-incrimination was an unavailable witness as contemplated by Rule 804(a)(1)); *see also* U.S. Const. Amend. V; Tenn. Const. Art. I, § 9. The trial court abused its discretion in concluding otherwise.

The next question is whether the notarized statement was a "statement against interest" as contemplated by Rule 804(b)(3). Having ruled that Mr. Land was not an unavailable witness, the trial court did not reach this question. To be admissible as a statement against interest, the statement must both inculpate the declarant in the crime and tend to exculpate the defendant of it. *State v. Dotson*, 254 S.W.3d 378, 392-93 (Tenn. 2008); *State v. John Curtis Perry, Sr.*, No. M2019-01311-CCA-R3-CD, 2021 WL 1111368, at *21 (Tenn. Crim. App. Mar. 23, 2021), *perm. app. denied* (Tenn. July 12, 2021).

In the notarized statement, Mr. Land "confess[ed] to the crimes pending against [the Defendant]." He explained that, while intoxicated, he had confused the Defendant's cell phone for his own and thought he deleted images and search data from the Defendant's cell phone. Sexual exploitation of a minor is defined as follows: "It is unlawful for any person to knowingly possess material that includes a minor engaged in: (1) Sexual activity; or (2) Simulated sexual activity that is patently offensive." T.C.A. § 39-17-1003(a) (defining the offense of sexual exploitation of a minor). In his statement, Mr. Land inculpated himself of this offense. At the time Mr. Land created the notarized statement, the Defendant had been charged by warrant with a single count of sexual exploitation of a minor, but he had not yet been indicted for the sixteen counts for which he was ultimately convicted.

The State argues that, in determining whether a statement is against the declarant's penal interest for purposes of Rule 804(b)(3), the court "must examine each specific

- 7 -

assertion" in the statement. *See State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008). In the notarized statement, Mr. Land "confess[ed] to the crimes pending against [the Defendant]." This statement was inculpatory of Mr. Land.

Mr. Land also explained his access to and use of the Defendant's cell phone and his belief that he had deleted images and search data. This statement was also inculpatory of Mr. Land.

Further, Mr. Land broadly stated that, due to Mr. Land's conduct relative to the Defendant's cell phone, the Defendant could not have knowingly possessed the images on the Defendant's cell phone. This statement alleging that the Defendant had no criminal liability is not inculpatory of Mr. Land.

The portions of the statement in which Mr. Land confessed to the crimes of which the Defendant was accused and explained his access to and use of the Defendant's cell phone "tended to subject the declarant[, Mr. Land,] to . . . criminal liability . . . [such] that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *See* Tenn. R. Evid. 804(b)(3). These portions of Mr. Land's statement were admissible as statements against interest under Rule 804(b)(3), and the trial court erred in excluding these portions of the statement. However, Mr. Land's statement that the Defendant had no criminal liability was not an admissible statement against interest, and it was properly excluded. *See id.*

The more difficult question is whether Mr. Land's statement may also be viewed as tending to exculpate the Defendant. Viewing the admissible portions of the statement in their totality, Mr. Land admitted using the Defendant's cell phone and that he thought he had deleted child pornography images and the data related to the search history. The Defendant also gave a statement, however, in which he admitted that he knew his phone contained "a few" child pornography images and that he had taken screenshots of such images when they "popped up" in his browser. The record reflects that fourteen of the images contained in Exhibit 1 and ten additional images in the remaining exhibits were screenshots. In addition, Officer Curry testified that he viewed "four or five" child pornography images on the Defendant's cell phone, that he showed the images to the Defendant, who "appeared to be surprised" but admitted that "he was aware" of them. Thus, Mr. Land's statement may fairly be viewed as tending to exculpate the Defendant, at least as to the counts of the indictment that did not involve screenshot images. *See Dotson*, 254 S.W.3d at 392-93.

With this in mind, we turn to the question of whether the trial court's erroneous exclusion of this evidence was harmless, in view of the trial evidence, or whether we must reverse the convictions and remand the case for a new trial.

Recognizing that all errors are not equal, our supreme court has established three categories of error—structural constitutional error, non-structural constitutional error, and non-constitutional error. *State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003); *State v. Garrison*, 40 S.W.3d 426, 433-34 (Tenn. 2000); *State v. Harris*, 989 S.W.2d 307, 314-15 (Tenn. 1999). The distinctions between these categories dictate the standards to be applied when determining whether a particular error is harmless. *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). A trial court's error in admitting evidence under the Tennessee Rules of Evidence falls into the category of non-constitutional error, and harmless error analysis under Tennessee Rule of Appellate Procedure 36(b) is appropriate. *See State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014); *see also State v. James*, 81 S.W.3d 751, 763 (Tenn. 2002) (noting that "[h]armless error analysis applies to virtually all evidentiary errors other than judicial bias and denial of counsel"). Pursuant to Rule 36(b), the defendant bears the burden of showing that a non-constitutional error "more probably than not affected the judgment or would result in prejudice to the judicial process." T.R.A.P. 36(b); *see Rodriguez*, 254 S.W.3d at 372.

The present case is complicated due to the many counts of the indictment and the numerous images involved. Had the evidence of Mr. Land's statement been admitted, the jury would have been required to resolve the question of the Defendant's guilt on each count by weighing the Defendant's admission of (1) his knowledge that child pornography images existed on his cell phone and (2) his having captured some images by screenshot inculpated him for all sixteen counts of the indictment, as compared with Mr. Land's statement against interest admitting that he had set up and had used the Defendant's cell phone and implying that he viewed child pornography with the Defendant's cell phone when Mr. Land attempted to delete the images and erase the search data.

We examine, first, the effect of the error as to the images which Officer Richardson identified as screenshots and the additional images which appear to be screenshots, based upon Officer Richardson's testimony as to the indicators of a screenshot image. The Defendant admitted that he made screenshots of pop-up images. He also admitted that he knew his cell phone contained child pornography images. When considering Mr. Land's statement that he mistook the Defendant's cell phone for his own and that he thought he deleted images and data related to search history from the Defendant's cell phone with the Defendant's statement that he made screenshot images and knew his cell phone contained child pornography images, we cannot conclude that the trial court's exclusion of Mr. Land's statement "more probably than not affected the judgment[s]" for Counts 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15, the images which were screenshot. *See* T.R.A.P. 36(b); *see Rodriguez*, 254 S.W.3d at 372. Reversal of these counts is not required.

The remaining counts, other than Count 1, which we will discuss separately, do not involve screenshot images. When considering Mr. Land's statement, with the Defendant's statement admitting he created and knew about the screenshot images, we conclude that the trial court's exclusion of Mr. Land's statement "more probably than not affected the judgment[s]" for Counts 2, 3, 4, 12, and 16, the images which were not screenshots. Reversal of these convictions and remand for a new trial is the necessary result of the trial court's error.

Finally, Count 1 charged the Defendant with possession of more than fifty images. The State offered fifty-five images to support this count. Fourteen of those images, exhibits 1M, 1P, 1Q, 1R, 1DD, 1FF, 1RR, 1SS, 1TT, 1VV, 1XX, 1YY, 1ZZ, 1AAA appear to be screenshots, based upon the criteria identified by Officer Richardson. The remaining forty-one images do not appear to be screenshots, based upon the testimony about the appearance of screenshots and our review of Exhibit 1. Because fewer than fifty-one images do not appear to be screenshots, we conclude that the trial court's exclusion of Mr. Land's statement more probably than not affected the judgment in Count 1. This conviction requires reversal and remand for a new trial.

In consideration of the foregoing and the record as a whole, the judgments in Counts 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15 are affirmed. The judgments in Counts 1, 2, 3, 4, and 16 are reversed, and the case is remanded for a new trial on these counts.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE